1

2

3

4

5 **IN THE UNITED STATES DISTRICT COURT**

6 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8 YIA LOR,                                          CASE NO.  1:04-cv-06742 TAG

9                        Plaintiff,              MEMORANDUM DECISION AND ORDER
                                                  ON PLAINTIFF'S APPEAL FROM
10                                                ADMINISTRATIVE DECISION

11        vs.
                                                  ORDER REMANDING CASE PURSUANT
11                                                TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

12
                                                  ORDER DIRECTING THE CLERK TO
13 JO ANNE B. BARNHART,                           ENTER JUDGMENT IN FAVOR OF
   Commissioner of Social Security,              PLAINTIFF AND AGAINST DEFENDANT
14
                        Defendant.
15 _____/

16
              Plaintiff Yia Lor ("claimant" or "plaintiff") seeks  judicial review of an administrative
17
   decision denying her claim for Supplemental Security Income benefits under the Social Security Act
18
   ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the
19
   Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on December 23,
20
   2004 (Doc 1), and her opening brief on August 24, 2005.  (Doc. 14).  The Commissioner filed her
21
   opposition on September 20, 2005 (Doc. 15).  Claimant did not file a reply brief.
22
              Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed
23
   before a United States Magistrate Judge.  (Docs. 5 and 8).  By an order dated May 12, 2005, this
24
   action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 11).
25
                                        **JURISDICTION**
26
              On or about October 18, 2001, claimant filed an application for Supplemental Security
27
   Income ("SSI") benefits alleging an inability to work since August 23, 2001 on account of back pain
28

1

due to dextroscoliosis, minimum degenerative change and lumbar pain.  (Administrative Record

("AR") 18, 75, 99).  Claimant's application was denied initially and on reconsideration, whereupon

claimant requested an administrative hearing.  (AR 59-62, 65-68, 69).   The hearing was conducted

on March 20, 2003, after which, on December 17, 2003, Administrative Law Judge ("ALJ") James

E. Ross found that claimant was not disabled.  (AR 19-24).  The Appeals Council denied claimant's

request for review on November 8, 2004 (AR 5-8), leaving the ALJ's decision of December 17,

2003, as the final decision of the Commissioner.  On December 23, 2004, within 60 days after the

Appeals Council denied review, claimant timely filed an appeal with the district court pursuant to 42

U.S.C. § 405(g).  (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the

briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on June 15, 1960, making her 43 years old at the time of ALJ Ross's

decision.  (AR 75).  A minimal amount of testimony was taken at the administrative hearing.

Claimant testified, through an interpreter, that she had a lot of back pain beginning in August 2001.

(AR 40).  Claimant also testified that she experienced depression in June 1999, stopped working in

August, 2001, due to back pain, and then began treating for depression early in 2002 (after her SSI

claim was filed).  (AR 40, 42).

With respect to her depression, claimant's medical records show that she attended bi-weekly

group therapy visits at Fresno County Mental Health from January, 2002 through January 2003, the

period for which claimant was approved for services.  (AR 252-300).  Her diagnosis, as reported by

R. Vivian, C.S., was major depressive disorder, delayed onset, recurrent severe, without psychotic

features.  (AR 278).  Within several months of the onset of her group therapy sessions, claimant

began treating with Maximo Parayno, M.D., at Kings Winery Medical Clinic.  (AR 20, 235).  As

reported by the ALJ, Dr. Parayno diagnosed claimant with depressive disorder and prescribed Zoloft,

to which he later added Trazadone.  (AR 20, 235).  Also as reported by the ALJ, Dr. Parayno noted

in April, 2002, that claimant had thoughts of suicide but no plan, was sleeping poorly, was

depressed, had poor memory and poor concentration.  (AR 20, 234).  In June, 2002, Dr. Parayno

2

raised claimant's dosage of Zoloft in response to her continuing complaints of "hopelessness,

worthlessness, poor memory, concentration and forgetfulness." (AR 20, 228). By October, 2002,

Dr. Parayno noted that claimant's mood had brightened and that her medications were helping. (AR

20, 309). Dr. Parayno noted a GAF score of 65 in December, 2002 (AR 20, 259) and that, on

January 16, 2003, claimant was alert but disoriented. (AR 20, 256). In a Mental Impairment

Questionnaire dated January 3, 2003, Dr. Parayno diagnosed claimant as having "Depressive

Disorder NOS [not otherwise specified]" (AR 323). He noted a current GAF score of 50 and that

claimant's treatment response was "fair." (Id.). Prescribed medications were listed as Zoloft (150

ml daily), Trazadone and Elavil. (Id..) Dr. Parayno's clinical findings were that claimant was:

"Disoriented to time & place, doesn't know the date, address, phone no. & D.O.B.; depressed feel

'helpless' & worthless, low energy & no interest." (Id.) His prognosis was "guarded." (Id.) Dr.

Parayno concluded that claimant was "seriously limited, but not precluded" vis-a-vis most aspects of

unskilled work (AR 235) and was "unable to meet competitive standards" in all aspects of skilled

work. (AR 236). As to the four primary areas of functional limitation, Dr. Parayno concluded that

claimant had "marked" limitations as to (1) activities of daily living, (2) maintenance of social

functioning and (3) concentration, persistence or pace, and that she experienced "one or two"

episodes of decompensation within a twelve month period, each of at least two weeks duration. (AR

327).

On August 23, 2003, claimant underwent a psychiatric consultative examination by Frank

Wilson, Jr., M.D. (AR 329-35). Dr. Wilson concluded that claimant "suffers with significant

cultural conflicts which causes her to lose touch with her true feelings and not be able to experience

the positive effects of therapy." (AR 334). Upon diagnosing "dysthymic disorder" and

"somatization disorder," Dr. Wilson concluded that claimant had impairments ranging from "slight"

to "marked" in her ability to understand, remember and carry out instructions (AR 334), plus

impairments ranging from "none" to "moderate" in her ability to respond appropriately to

supervisors and co-workers. (AR 335). Dr. Wilson did not specifically address the four primary

areas of functional limitation.

///

3

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the analysis proceeds to step two, which considers whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

///

1      The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

2 to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five

3 step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the

4 claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to

5 assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

6 shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics

7 in original).  The initial burden is met once a claimant establishes that a physical or mental

8 impairment prevents her from engaging in her previous occupation.  The burden then shifts to the

9 Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2)

10 that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail

11 v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

12 **STANDARD OF REVIEW**

13      Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,

14 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

15 the determination is not based on legal error and is supported by substantial evidence.  See, Jones v.

16 Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

17 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

18 contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is

19 not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v.

20 Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more

21 than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

22 than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

23 Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

24 "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

25 Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

26 conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

27 Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as

28 a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

5

1   877 F.2d 20, 22 (9th Cir. 1989) (*quoting* <u>Kornock v. Harris</u>, 648 F.2d 525, 526 (9th Cir. 1980)).

2       It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  <u>Richardson</u>,

3   402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold

4   the decision of the ALJ.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is

5   substantial evidence to support the administrative findings, or if there is conflicting evidence that

6   will support a finding of either disability or nondisability, the finding of the Commissioner is

7   conclusive.  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

8   supported by substantial evidence will still be set aside if the proper legal standards were not applied

9   in weighing the evidence and making the decision.  <u>Brawner v. Secretary of Health and Human</u>

10  <u>Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

11                                **ALJ'S FINDINGS**

12      **Step One**

13      The ALJ found at step one that claimant "has not engaged in substantial gainful activity since

14  the alleged onset of disability," which was August 23, 2001.  (AR 23).

15      **Step Two**

16       At step two, the ALJ determined that the claimant has "neck and back pain of unclear

17  etiology, and a depressive disorder" and concluded that this combination of impairments would be

18  considered "severe."  (AR 23).

19      **Step Three**

20      The ALJ next considered whether claimant's severe impairments were among those

21  acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  <u>See</u>

22  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1 (Listing of Impairments).

23  The ALJ concluded that claimant's impairments did not meet or medically equal any of such listed

24  impairments.  (AR23).

25      **Step Four**

26      The ALJ concluded at step four that claimant had the residual functional capacity to perform

27  her past relevant work as a chicken cutter and therefore was not disabled.  (AR 23-24).

28  ///

1    **Step Five**

2        Having found that claimant could perform her past relevant work, the ALJ did not reach step

3    five of the sequential analysis.

4                                          **ISSUES**

5        Claimant's Opening Brief raised the following four issues for consideration:

6        A.  Whether substantial evidence supported the ALJ's determination that claimant's residual

7    functional capacity allowed her to perform her past relevant work as a chicken cutter.

8        This Court must uphold the Commissioner's determination that claimant is not disabled if the

9    Commissioner applied the proper legal standards and there is substantial evidence in the record as a

10   whole to support the decision.

11                                        **DISCUSSION**

12       Claimant asserts that "[f]undamental to the assessment of RFC by an ALJ is a requirement

13   that the ALJ explain how the evidence supports the ALJ's conclusions reached with respect to RFC"

14   (Doc. 14 at p. 7) and that "deleted from the ALJ's RFC assessment . . . were the moderate limitations

15   in functioning with respect to interaction with supervisors, co-workers and with responding

16   appropriately to work pressures expressed by Dr. Wilson and the 'serious' . . . limitations in working

17   with others without being unduly distracted, accepting instructions and respond[ing] appropriately to

18   criticism from supervisors, or getting along with co-workers or peers without unduly distracting

19   them, expressed by [Dr. Parayno]."  (Id.)

20       The problem confronted by this Court in addressing claimant's argument is that the ALJ did

21   not follow the special evaluation technique applicable to mental impairments.  The special technique

22   requires the ALJ to first evaluate claimant's pertinent symptoms, signs, and laboratory findings to

23   determine whether she has a medically determinable impairment.  If one exists, the ALJ must specify

24   the symptoms, signs and laboratory findings that substantiate the presence of the impairment.  20

25   C.F.R. § 404.1520a(b)(1)(Disability Insurance Benefits)("DIB"); 20 C.F.R. § 416.920a(b)(1)(SSI).

26       Importantly, under the special evaluation technique specifically applicable to mental

27   impairments, the ALJ *must* rate the degree of functional limitation that is experienced by claimants.

28   20 C.F.R. § 404.1520a(b)(2)(DIB); 20 C.F.R. § 416.920(a)(b)(2)(SSI).  This *rating* process covers

                                                7

1    four broad functional limitation areas: (1) activities of daily living, (2) social functioning;

2    (3) concentration, persistence or pace and (4) episodes of decompensation.  20 C.F.R.

3    § 404.1520a(c)(3)(DIB); 20 C.F.R. § 416.920a(c)(3)(SSI).  For the first three functional areas (daily

4    living, social functioning, concentration), a five-point scale is used: none, mild, moderate, marked,

5    and extreme.  In rating the fourth functional area (episodes of decompensation), a four-point scale is

6    used: none, one or two, three, four or more.  20 C.F.R. 404.1520a(c)4)(DIB); 20 C.F.R.

7    § 416.920a(c)(4)(SSI).

8         The aforementioned rating process is necessary because, in performing step three of the

9    sequential analysis, the ratings come into play in the ALJ's determination as to whether a severe

10   mental impairment is or is not a "Listed" impairment.  See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1

11   § 12.00(C)(discussing mental impairment ratings as used in the Listings).  Specifically, as set forth in

12   the regulations pertaining to "Evaluation of mental impairments":

13          "(d) After we rate the degree of functional limitation resulting from
            your impairment(s), we will determine the severity of your mental
14          impairment(s).

15          (1) If we rate the degree of your limitation in the first three functional
            areas as "none" or "mild" and "none" in the fourth area, we will
16          generally conclude that your impairment(s) is not severe . . . .

17          (2) If your mental impairment(s) is severe, we must then determine if it
            meets or is equivalent in severity to a listed mental disorder. . . ."
18
19   20 C.F.R. § 416.920a(d)(1)-(2).  Critically, the ALJ must *document* application of the special

20   evaluation technique applicable to mental impairments.  20 C.F.R. § 404.1520a(e)(DIB); 20 C.F.R.

21   § 416.920a(e)(SSI)("At the administrative law judge hearing . . . we will document application of the

22   technique in the decision"); 20 C.F.R. § 416.920(a)(e)(2)("The decision must include a specific

23   finding as to the degree of limitation in each of the functional areas").  See Mersman v. Halter, 161

24   F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)(regulations "require[] the ALJ's written decision to make a

25   specific finding as to the degree of limitations in each functional area").

26        Here, while the ALJ found that claimant had a combination of impairments, including

27   depression, that was "severe" (AR 23), his decision is otherwise devoid of the required functional

28   analysis.  There was no grading of claimant's abilities in any of the four functional areas, and no

8

1  documented application of those grades to the Listings.[1]

2       Consequently, the Court concludes that claimant's objections are valid.  See Lindsay v.

3  Barnhart, 370 F. Supp. 2d 1036, 1042-43, 1045 (C.D. Cal. 2005)(remand required because, inter alia,

4  ALJ "failed to assess plaintiff's mental impairment, as required by 20 C.F.R. § 404.1520a, and failed

5  to rate the degree of functional loss resulting from plaintiff's mental impairment by making specific

6  findings about plaintiff's daily activities, social functioning, concentration, persistence, or pace, and

7  episodes of decompensation"); Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)(the

8  ALJ's written decision must make specific findings as to the degree of limitation in each functional

9  area described in 20 C.F.R. § 404.1520a(c), the disability insurance benefit equivalent to SSI section

10  416.920a(c)).  Accordingly, this Court finds that remand is required for a proper and complete

11  application of the special evaluation technique applicable to mental impairments.

12                              **CONCLUSION**

13       Claimant submits that the ALJ's errors should result in this Court either reversing the ALJ's

14  decision or remanding the case.  (Doc. 16 at p. 7).  The Court has the discretion to remand the case for

15  additional evidence and finding or to award benefits.  Smolen, 80 F.3d at 1292.  The Court may award

16  benefits if the record is fully developed and further administrative proceedings would serve no useful

17  purpose.  Id.  Remand is appropriate when additional administrative proceedings could remedy defects.

18  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, further development is necessary

19  for a proper determination to be made.  Proper application of the special evaluation technique applicable

20

21  ───────────

22  [1]  An example of such an application could be as follows: Dr. Parayno rated claimant's impairments as "marked" (daily living),  "marked" (social functioning), "marked" (concentration) and "one or two" (extended episodes of decompensation) in the four functional areas.  (AR 327).  Carrying these forward to the Listings, a listed impairment is established if there exists (i) medically documented persistence of at least one of seven categories of affective changes, one of which is memory impairments, resulting in (ii) *two* categories of functional impairments that are "marked" or (in the case of episodes of decompensation) "repeated."  20 C.F.R. § 404 Subpt. P App. 1 at ¶ 12.02.  Inasmuch as Dr. Wilson reported "memory impairments" in stating that claimant had slight to marked limitations in remembering short to detailed instructions (AR 334), and given that Dr. Parayno found more than two categories of "marked" functional impairments, a Listed impairment arguably exists.  However, it is for the ALJ, not this Court, to make "specific finding[s] as to the degree of limitation in each of the functional areas" 20 C.F.R. § 416.920a(e)(2).

27

28

9

1    to mental impairments must be performed by the ALJ and must be used wherever appropriate in the

2    sequential analysis.

3        For the reasons outlined above, the undersigned concludes that the Commissioner's decision to

4    deny claimant disability benefits was not supported by substantial evidence in the record and was not

5    based upon the proper legal standards.

6        Accordingly, it IS ORDERED that

7        1.    Claimant's social security complaint IS GRANTED;

8        2.    The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

9    development of the record and further consideration, consistent with this decision, of claimant's status

10   as disabled, including whether claimant's impairments are so severe as to preclude substantial gainful

11   activity, 20 C.F.R. §§ 404.1520(d)(DIB), 416.920(d)(SSI); 20 C.F.R. § 404 Subpt. P App. 1; whether

12   claimant is capable of performing work she has performed in the past, 20 C.F.R. §§ 404.1520(f)(DIB),

13   416.920(f)(SSI); and, if required, whether on the basis of claimant's age, education, work experience,

14   and residual functional capacity, claimant can perform any other gainful and substantial work within the

15   economy, 20 C.F.R.§§ 404.1520(g)(DIB), 416.920(g); and

16       3.    Judgment BE ENTERED for claimant Yia Lor and against Defendant Jo Anne B.

17   Barnhart.

18

19   IT IS SO ORDERED.

20   Dated:   __March 15, 2006__                          _____/s/ Theresa A. Goldner_____
         **j6eb3d**                                       UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28

10